UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JOHN GREER, *Pro Se*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-00158 |
| | ) | (JORDAN/GUYTON) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 9][1] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 10, 11]. John Greer ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). Plaintiff filed his application for a period of disability and disability insurance benefits under the Social Security Act on October 9, 2010, alleging disability since May 1, 2004, due to heart failure, a pacemaker, neuropathy in his hands and feet, a thoracic spine vertebrate fracture, degenerative disc disease, depression, anxiety, pulmonary disease ("COPD"), hypercholesterolemia, a heart attack, and

---

[1] On March 25, 2014, the District Judge ordered [Doc. 7] the Plaintiff to show cause why the case should not be dismissed for failure to prosecute, due to Plaintiff's failure to file his dispositive motion and brief as previously directed. The Plaintiff filed a letter with the Court in response, which the District Judge construed [Doc. 8] as a motion for summary judgment out of deference to the Plaintiff's *pro se* status.

1

sarcoma cancer. His application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held before ALJ Michael J. Davenport, in Kingsport, Tennessee, on August 11, 2011. Plaintiff was present and testified. The ALJ issued an unfavorable decision on November 7, 2011, finding that the Plaintiff was capable of light work. The Appeals Council denied the Plaintiff's request for review on April 23, 2013; thus, the decision of ALJ Davenport became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2004 through his date last insured of September 30, 2010 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease with associated radiculopathy, chronic obstructive pulmonary disease ("COPD") and neuropathy in the hands and feet (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could do no work that would expose him to extreme temperatures, dust or fumes, as well as no work around electrical equipment due to his pulmonary limitations and pacemaker.

6. Through the date last insured, the claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 17, 1964 and was 46 years old, which is defined as a younger individual 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education (11th grade) and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2004, the alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(g)).

[Tr. 12-19].

## II. DISABILITY ELIGIBILITY

An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity

3

that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. § 423(d)(2)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the residual functional capacity ("RFC") assigned to the Plaintiff by the ALJ is not supported by substantial evidence. [Doc. 9 at 2].

The Commissioner asserts that the ALJ properly determined the Plaintiff's RFC based on substantial evidence. [Doc. 11 at 4, 9].

### V. ANALYSIS

The Plaintiff argues that the RFC assigned to him by the ALJ is not supported by

substantial evidence. [Doc. 9 at 1, 2]. Specifically, the Plaintiff argues that the ALJ failed to consider the total debilitating impact of Plaintiff's cardiac condition, pacemaker, COPD, degenerative disc disease, neuropathy, and learning disability in the Plaintiff's RFC. [Id.]. In addition, the Plaintiff asserts that the vocational expert testified during the hearing that given the Plaintiff's impairments, there were no jobs that he would be capable of performing. [Id. at 2].

The Commissioner argues that the ALJ properly considered all of the Plaintiff's health conditions in assessing the Plaintiff's RFC and that the Plaintiff failed to prove that those conditions would prevent the Plaintiff from performing light work as opined by the ALJ. [Doc. 11 at 9].

An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence in the record. Rudd v. Comm'r of Soc. Sec., No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.C. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003).

In his decision, the ALJ discussed medical records documenting the treatment and

7

condition of the Plaintiff's degenerative disc disease. In September 2004, an MRI of the Plaintiff's lumbar spine revealed minimal disc bulging at the lumbosacral junction. [Tr. 15, 212]. Dr. Placentra noted that it could be causing some slight nerve root compression. [Id.]. In November 2004, Dr. Frazier performed a CT scan of the Plaintiff's spine and noted that the Plaintiff was "doing fine" and scheduled a follow-up for a year later. [Tr. 15, 205]. Before returning to Dr. Frazier, the Plaintiff saw Dr. Wiles, who diagnosed the Plaintiff with cervical lumbar spondylosis with no significant stenosis, normal aging of the spine and mild degenerative disc disease. [Tr. 15, 578-79]. The ALJ observed that in November 2005, another CT scan of the spine was scheduled for the Plaintiff; however, he missed the CT scan appointment. [Tr. 15, 194-95]. The Plaintiff refused to comply with Dr. Frazier's requests to perform another CT scan and did not return for another appointment, concerning back pain, for two years. [Id.]. In November 2009, the Plaintiff had another CT scan performed on his spine which revealed no definite abnormalities. [Tr. 15, 434].

The ALJ also discussed medical records documenting the condition of the Plaintiff's COPD. In April 2008, the Plaintiff was diagnosed with hyperextension of the lungs consistent with COPD, but that otherwise the Plaintiff's lungs were clear with no acute changes. [Tr. 15, 396].

In addition, the ALJ discussed medical records documenting the treatment and condition of the Plaintiff's neuropathy. In December 2005, the Plaintiff was diagnosed by Dr. Garriot with paresthesias and dysesthesias, but the presence of neuropathy was doubted. [Tr. 16, 192-93]. In February 2008, Dr. Nazarov diagnosed the Plaintiff with neuropathy. [Tr. 16, 472]. This diagnoses was affirmed by Dr. Hopland who determined that the Plaintiff had suffered from Neuropathy from 2008-2010. [Tr. 16, 443-506]. The ALJ observed that although the Plaintiff

suffered from neuropathy, Dr. Hopland noted in June 2009 that the Plaintiff was able to work and maintain employment on his current medications. [Tr. 16, 471-72]. In April 2011, Dr. Boutros diagnosed the Plaintiff with vitamin deficient neuropathy. [Tr. 16, 550].

The ALJ next discussed medical records documenting the treatment and condition of the Plaintiff's cardiovascular limitations. The ALJ noted that although there were findings of bradycardia with syncope and arrhythmia, the Plaintiff's heart disease was treated with a left heart catherization and the placement of a pacemaker on April 21, 2008. [Tr. 13, 400, 443, 530]. In November 2009, the Plaintiff performed an exercise stress test pursuant to Bruce protocol. [Tr. 13, 440]. The test revealed that the Plaintiff had 97% of the maximum predicted heart rate for his age, and that besides a mild dyspnea at the peak of insertion, there were no indications of significant electrocardiographic changes, arrhythmias, or chest pain. [Id.].

In conclusion, the ALJ adopted certain limitations recommended by Dr. Gulbenk, a non-examining, non-treating state medical consultant, who completed a "Physical Residual Functional Capacity Assessment" form in December 2010. [Tr. 16, 523-31]. Specifically, the ALJ agreed with Dr. Gulbenk that the Plaintiff should avoid concentrated exposure to extreme temperatures, vibration and respiratory irritants such as fumes, odors, dusts, gases, poor ventilation, etc., as well as all exposure to hazards such as machinery and heights, specifically strong electromagnetic fields. [Tr. 16, 530]. The ALJ gave little weight, however, to Dr. Gulbenk's assessment that Plaintiff could perform medium work; instead the ALJ determined that the Plaintiff had the RFC to perform light work. [Tr. 14, 18].

The Court finds that the ALJ properly considered the impact of the Plaintiff's health conditions in assessing the Plaintiff's RFC. See Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1227 (6th Cir. 1988) (holding that "[i]t is the ALJ's duty to weigh the evidence

of record"). A review of the medical evidence reveals that the Plaintiff's degenerative disc disease has not worsened as of September 2004, and that the Plaintiff was briefly able to resume working in April 2007. [Tr. 15, 212, 273]. Although the evidence supports Plaintiff's claim of suffering from COPD and neuropathy, the medical records reveal that despite these conditions, Dr. Hopland indicated that Plaintiff's medication allowed him the possibility to return to work and maintain employment in June 2009. [Tr. 15, 384, 471-72]. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis [of a disease] says nothing about the severity of the condition"). The evidence further indicates that although the Plaintiff's cardiovascular condition did require the placement of a pacemaker, in November 2009, Plaintiff had 97% of his maximum predicted heart rate for his age. [Tr. 13, 440]. The medical record is silent as to any worsening of Plaintiff's degenerative disc disease, COPD, neuropathy, and cardiovascular condition.

Plaintiff also argues that the ALJ committed error by not finding the Plaintiff's learning disability was a "severe" impairment at step two of the sequential evaluation. [Doc. 9 at 2]. The Court finds this argument to be without merit. The ALJ found that the Plaintiff had other severe impairments, that is, "degenerative disc disease", "COPD", and "neuropathy" and proceeded to the next step of the sequential evaluation process. The specific impairment noted by the ALJ in his step two finding is irrelevant. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240 244 (6th Cir. 1987); see also McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (noting it was "legally irrelevant" that ALJ found some impairments not severe because ALJ found claimant had severe impairments and completed evaluation process). Additionally, the Court has not found, nor has the Plaintiff cited to, any evidence in the record that would indicate the existence or effect of an alleged learning disability. See Foster v. Bowen, 853 F.2d

10

483, 489 (6th Cir. 1988) (holding that a claimant must not only establish the existence of a medically-diagnose mental impairment, but also must prove its severity and functional impact).

Finally, the Plaintiff submits that during the hearing, the VE testified that given the Plaintiff's condition, there were no jobs he is able to perform. [Doc. 9 at 2]. The ALJ discussed two hypothetical situations to determine possible jobs, if any, Plaintiff could perform. The first hypothetical involved an individual with the same age, education, past relevant work experience, and the specific work limitations as opined by Dr. Gulbenk in her RFC assessment. [Tr. 19, 44]. The vocational expert testified that there were 2,810,000 jobs nationally and 59,900 jobs regionally which the hypothetical individual could perform, including: food prep, cafeteria line, and cashier. [Tr. 19, 45]. The second hypothetical included the same impairments as the first hypothetical, but also included the inability to concentrate on persistent work tasks. [Id.] The vocational expert testified that the hypothetical individual could not perform any jobs. [Tr. 46].

In order for substantial evidence to support an ALJ's reliance on a VE's answer to a hypothetical question, the question must accurately reflect a plaintiff's physical and mental impairments. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). However, "[i]n fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. 2007) (citing Casey v. Sec'y of HHS, 987 F.2d 1230, 1235 (6th Cir. 1993)). In this case, the ALJ found the first hypothetical more applicable to the Plaintiff than the second hypothetical. Although the Plaintiff claimed to suffer from a concentration impairment, consistent with the second hypothetical, the ALJ determined the alleged impairment was not credible due to finding no evidence that would indicate the existence of an alleged

11

concentration impairment. [Tr. 18].

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and the Plaintiff's allegations of error are not well-taken.

VI.  CONCLUSION

Therefore, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **DENIED**; and that the Commissioner's Motion For Summary Judgment **[Doc. 10]** be **GRANTED**.

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).